## McBRYDE ESTATE, LIMITED, *v.* JAMES R. GAY, McH. ROBINSON, A. ROBINSON and F. GAY, partners do- in business under the firm name of GAY & ROBINSON.

EXCEPTIONS FROM CIRCUIT COURT, FIFTH CIRCUIT.

SUBMITTED APRIL 21, 1903.  DECIDED JULY 1, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

When the boundaries of an ili, determined by a Commissioner of Boundaries, are set forth by the Commissioner in a general description and also in a particular description made and entered in the record immediately thereafter, the particular description must prevail over the general in case of a conflict.

A call in a general description reading, "returning on the eastern bank
of the river in all its windings and turnings to place of commence-
ment", does not necessarily place the line at the water's edge but is
capable of being understood as meaning that the line is on the bank
at a reasonable distance from the water, and will be so construed
where from the remainder of such description and from the particu-
lar description made in pursuance of the general and from a map
accompanying the particular and made a part thereof, the intent is
apparent that the line should so run *on* the bank following bearings
and distances given.

### OPINION OF THE COURT BY PERRY, J.

This is an action, brought under the statute, to quiet the
title to the Ili of Kuiloa, Kauai. The ili is bounded by the
Ahupuaa of Hanapepe on all sides but one, to wit, the makai
or easterly end, the line on that side running across the mouth
of the Hanapepe stream. It is undisputed in this case that the
Kapiolani Estate, Limited, a corporation, is the owner of the
Ili of Kuiloa, that the plaintiff holds a lease of the same for
the term of fifteen years from April 1, 1901, that the defendants
have no title or interest to or in the ili and that they (the de-
fendants) are in possession of the Ahupuaa of Hanapepe under
a lease for thirty years made in 1887 by the Commissioners of
Crown Lands. The sole question is one of boundaries,—whether
or not a certain strip of land on the eastern side of the Hana-
pepe stream is a part of the Ili of Kuiloa.

The ili was awarded by name only. On November 15, 1870,
Queen Kapiolani, under whom the plaintiff claims and who at
that time held the title to the property, filed before the Com-
missioner of Boundaries for the Island of Kauai a petition for
the settlement of its boundaries. After publication of notice
and service on the Commissioners of Crown Lands as owners
of Hanapepe, hearing was had on December 13, 1870. In the
commissioner's record of proceedings, written in a bound vol-
ume, at pages 15 and 16, the entry under the date last named
is: "The petitioner appeared and called several witnesses

whose evidence is now on file, and from said evidence decision was given in favor of the petitioner (the defendants not having called any witnesses) and survey ordered as follows:

"Survey of Kuiloa by James Gay.

"Commencing at two small stones let into the ground a distance from a double-stemmed Pride of India Tree of 70 links, bearing E. 4° N. Magnetic. Thence N. 67° 43' W. a distance of 210 links along the Eastern bank of Hanapepe river. Thence N. 77° 28' W. a distance of 761 links crossing a branch of Hanapepe stream (as shewn on plan). Thence N. 81° 26' W. a distance of 942 links crossing the principal stream of river and running to the Eastern side of a Water Lead, the centre of which forms the boundary of the said land. Thence following the said Water Lead to where it joins the Hanapepe river, having the following bearings and distances:" (Here follow four bearings and distances, the last one running) "to the river bank. Thence following the river to the sea, with the following bearings and distances:" (Here follow seven bearings and distances.) "Thence S. 55° 35' E. crossing a sand-spit and mouth of Hanapepe river to a rocky point overlooking the sea, a distance of 1260 links. Thence returning on the Eastern side of the river to commencement, with the following bearings and distances:" (Here follow twelve bearings and distances.) "Thence N. 40° 41' E. a distance of 310 links crossing a slight bend and cutting off a portion of the river as shewn on plan. Thence "(here follow five bearings and distances). "Thence N. 57° 7' E. to commencement a distance of 602 links.

"The whole comprising an area of 67 A. 1 R. 0 P.

"Note. The bearings are from the true, *not magnetic,* North.

(Signed)    "Jas. W. Gay, Surveyor.

(Signed)    "Duncan McBryde,
          "Commissioner Boundaries."

At page 149 of the same book appears an entry dated December 13, 1870, but written, as shown by preceding entries, after October, 1875, and reading as follows:

"Kuiloa Boundary neglected to be entered.

"Decision rendered 13th December, A. D. 1870.

"Commencing at two small stones in the ground a short distance from a double-stemmed Pride of India tree near the East

bank of the Hanapepe river and following along the Eastern
Bank of said Hanapepe river.   Thence crossing a branch of
Hanapepe river.    Thence crossing the principal stream and
running to the Eastern side of Water-lead the centre of which
forms the boundary of this land.   Thence following the said
Water-lead to where it joins the Hanapepe river.   Thence fol-
lowing the river to the sea.   Thence crossing a sandspit and
mouth of Hanapepe river to a rocky point overlooking the sea.
Thence returning on the Eastern Bank of the River in all its
windings and turnings to place of commencement.

(Signed)    "Duncan McBryde,
"Commissioner of Boundaries,
"Fourth Judicial Circuit."

At the trial in the court below, the plaintiff offered in evi-
dence a document indexed, "Ili of Kuiloa, Decision," and read-
ing as follows:

"Decision rendered by Duncan McBryde, Commissioner of
Boundaries for the Island of Kauai in reference to the Bound-
ary of Kuiloa an ili in the Ahupuaa of Hanapepe rendered on
the 13th day of December, A. D. 1872.

"Commencing on the Eastern side of the Hanapepe river near
a Double Stemmed Pride of India tree and thence running a
short distance along said Eastern Bank.   Thence crossing the
river and running to the Eastern side of Water Lead the centre
of which forms the boundary of this Land.   Thence following
said water lead to where it joins the Hanapepe river.   Thence
following the river to the sea, thence crossing a sand spit and
mouth of Hanapepe river to a rocky point overlooking the sea,
thence returning on the Eastern side of the river to place of
commencement.

(Signed)    "Duncan McBryde,
"Commissioner of Boundaries,
"Island of Kauai."

This document was, on the defendants' objection, excluded
on the ground that it was not the decision of the Commissioner,
—that the decision was that entered on page 149 of the bound
volume.   One exception is to the ruling holding such document
inadmissible and another to the decision of the Circuit Court

that the strip in question is not included within the boundaries of Kuiloa.

It may be assumed for the purposes of this case that the paper last referred to was correctly excluded, for, considering only the evidence which was admitted, we think that a new trial must be ordered.

The decision of the Commissioner, assuming such decision to be that set forth in the entry on page 149 of the bound volume, was reached and rendered after the hearing of the evidence adduced and before the making of the survey entered on pages 15 and 16 and the description then found by the commissioner to be the true one was, necessarily, in general terms only and was intended to be made more specific by a surveyor who should first actually run the lines on the ground.   The record, page 15, shows unmistakably that such survey was ordered by the commissioner immediately after the rendering of his original decision; and the description resulting from that survey as entered on pages 15 and 16 was accepted by the commissioner and adopted by him as the particular statement of the boundaries. It is insufficient to say that the signature of the commissioner appended at the bottom of page 16 is a signature to the record and not to the notes of survey.   The notes of survey as entered became a part of the record so signed and of the decision.   The commissioner did not copy the notes of survey in the volume merely as matter of interest to show how that particular surveyor interpreted or understood the general description, but to make clearer what the true boundaries were determined by the court to be.    Over the commissioner's signature appears the statement that he ordered the survey "as follows," that is, as in those notes set forth.    Under the circumstances, if there is any conflict between the general and the particular descriptions, the latter should, in our opinion, prevail.

The reference in Gay's description to a map made by him made that map a part of the description.   With the aid of the map, if not otherwise, the boundaries are easily ascertained

and certain. Black lines are there used to denote the water's edge at the very sides of the stream and red lines to denote direct bearings or "meander lines," as they are sometimes called; "green," as the surveyor specifically says in a note on the map, "denotes the boundary of Kuiloa." On the western side the green line runs along the centre of the water-lead, as called for by the general description, and then along the winding shore-line of the main stream, in other words, "follows" the stream as required by the general description, and then crosses the sand-spit and the mouth of the stream as directed. On the mauka end, likewise, its location is accepted by both sides as complying substantially with the general description. On the east, how-ever, it runs for much of its length at a distance of from 100 to 150 feet from the water's edge and when nearing the initial point there is a departure of about 350 feet. The contention of the defendants is that the general description makes the water's edge the boundary, that the bearings given in Gay's survey are of meander lines only, intended merely to locate the water line from point to point, and that, if there is any conflict, the general description found on page 149, "returning on the Eastern Bank of the River in all its windings and turnings to place of commencement," must prevail. In case of conflict our opinion is, as already stated, that the particular description must prevail. As to Gay's bearings on the East, one of them is shown by the map to be a meander line with the irregular boundary at the water's edge but the others, the map shows, are not meander lines. Not only does the map show this, but other considerations strengthen the view. The survey practically closes; it is unusually exact considering the large sizes and the irregular size of the property. The approximate location of the Pride of India tree, not now in existence, is agreed upon by both sides, and so is the initial point. For the first 400 feet after leaving the initial point and to the point where the stream is directed to be crossed the mauka line admittedly runs, not along the water's edge, but about forty feet distant. If on the

whole eastern side the water's edge was intended to be the boundary, then the initial point, now agreed upon, would of necessity be moved westward 400 feet to the water's edge; but that clearly was not intended. It is urged that one of Gay's courses as shown on the map cuts off a bend in the stream, that it could not have been intended to actually cut off a portion of the stream, and that this supports the view that even the surveyor intended the water line as the true boundary. So far as the intent of the surveyor is concerned, the answer is plain. Not only does the green line on the map cut off the bend in the stream, but in the description itself he says, "Thence N. 44° 41′ E. a distance of 310 links *crossing a slight bend and cutting off a portion of the river* as shown on plan,"—further evidence of an intent to depart from the water's edge; and this language was adopted by the commissioner in his particular and final description.

No substantial conflict necessarily exists between the last call of the general description as entered on page 149 and the corresponding calls of the particular description as understood by us. "On the eastern bank" does not necessarily mean "along the water's edge." The "bank" may be broad or it may be narrow; it may cover a wide extent of contiguous ground. (No testimony was adduced as to the precise nature of the ground contiguous to the river on the east.) It is capable of meaning *on* the bank, even if it may also mean *along the inner edge of* the bank. If liberty to run the line *on* the bank and at a reasonable distance from the water is recognized under the first part of this call, then the words "in all its windings and turnings" do not necessarily add an inconsistent direction. The line even of *on* the bank may well follow the windings and turnings of the river. There is no direction as to the eastern side, as there is as to the western, to *follow the river.* The words in the earlier part of the same general description, "along the eastern bank," have not been deemed by any one as an impediment to a departure from the water's edge.

It is contended that the map cannot be considered as a part of or as an aid to the particular description, because there is no evidence that the commissioner saw it. The point is not well taken. The map is specifically referred to in the surveyor's description. It was the duty of the commissioner to examine it before adopting the description as his own. Having adopted that description the presumption is that he did his duty and examined the map.

The exceptions are sustained, the judgment set aside and a new trial ordered.

*Messrs. Kinney, McClanahan & Bigelow and S. H. Derby* for the plaintiff.

*Messrs. Robertson & Wilder* for the defendants.